IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel., ) <br> PETRA HERNANDEZ ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> THERAPY PROVIDERS OF AMERICA, ) <br> INC., et al., ) <br> ) <br> Defendants. ) | Civil Action No. 06 CV 0760 <br><br> Hon. Charles R. Norgle |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Before the Court is Relator Petra Hernandez's ("Relator") Petition for Attorney's Fees, Expenses, and Costs. Relator requests attorneys' fees and costs for Robin Potter & Associates in the amount of $204,434.16 and $1,069.53, respectively; attorneys' fees and costs for Muriel Renner LLC in the amount of $12,760.00 and $736.15, respectively; and attorneys' fees for The Law Offices of Edward G. Renner in the amount of $13,425.00. Relator also requests the payment of the attorneys' fees required to prosecute this motion, for a total of $232,424.84. In addition, Relator seeks an enhancement of the attorneys' fees by one-third to account for the attorneys' contingent fee agreement. For the following reasons, the petition for attorneys' fees is granted in part and denied in part.

**I. BACKGROUND**

On February 9, 2006, Relator initiated this *qui tam* lawsuit under seal against seventeen named defendants including corporate entities and individuals (collectively "Defendants"), alleging violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729, the Medicare Anti-

Kickback provisions, 42 U.S.C. § 1395, and the Illinois False Claims Act ("IFCA"), 740 Ill. Comp. Stat. 175/3. Furthermore, Relator alleged that Defendants retaliated against her in violation of the FCA, the IFCA and Illinois common law. Before filing the complaint, Relator's attorneys Robin Potter and Edward Renner met with Assistant United States Attorney Kathryn Kelly ("AUSA Kelly") in December of 2004, and gave an oral presentation regarding the *qui tam* case. Attorneys for the federal government and the State of Illinois investigated the case further before the Relator's attorneys filed the complaint in 2006. The parties reached a settlement agreement with the federal government on September 8, 2010, and reached a settlement agreement with the State of Illinois on November 29, 2010. The parties settled the federal claims for $117,420.00, of which Relator received $23,484.00; and settled the state claims for $25,000, of which Relator received $6,200.00. On October 14, 2011, the Court entered judgment pursuant to the settlement agreements. Relator now moves for attorneys' fees and costs under § 3730(d) of the FCA and § 175/4(d)(1) of the IFCA. The motion is fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

Both the federal and state False Claims Acts allow a relator to "receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs." 31 U.S.C. § 3730(d)(1); 740 Ill. Comp. Stat. 175/4(d)(1). The Court calculates attorneys' fees in *qui tam* cases using the same standard as applied in 42 U.S.C. § 1988 civil rights actions. 132 CONG. REC. H9382-03 (daily ed. Oct. 7, 1986) (Statement of Rep. Berman), 1986 WL 786917; see also Blum v. Stenson, 104 U.S. 1051 (1984). To determine the amount of a reasonable attorneys' fee award, courts generally begin by calculating the lodestar, i.e., the number of hours reasonably expended on the litigation multiplied by an

attorney's reasonable hourly rate. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); see also Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C., 574 F.3d 852, 856 (7th Cir. 2009). "The district court may then adjust that figure to reflect various factors including the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." Schlacher, 574 F.3d at 856-57 (citations omitted).

**B. The Lodestar Calculation**

To justify the attorneys' fees expended in this litigation, Relator submits fifty-five pages of the line item invoices from her three representative law firms, which spans from the first conference between client and counsel in 2004 up to and including the work performed in preparing the instant fee petition. Pl.'s Pet. for Att'ys Fees, Expenses, and Costs, Ex. C [hereinafter "Relator's Attorneys' Complete Billing"]. Robin Potter & Associates billed 525.23 hours at attorney rates between $175 and $535 per hour, totaling $204,434.16; Muriel Renner, LLC billed 69 hours at attorney rates between $200 and $300 per hour, totaling $12,760.00; and The Law Offices of Edward Renner billed 49.4 hours at attorney rates between $200 and $300 per hour, totaling $13,425.00.[1] Defendants do not contest Relator's attorneys' hourly rates or any associated expenses. However, Defendants argue that Relator's attorneys' fees, especially those of Robin Potter & Associates, are excessive because given the nature of the *qui tam* case, the U.S. Government's involvement aided Relator and reduced the amount of work that Relator's attorneys had to perform.

"The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." Fox v. Vice, 131 S.Ct. 2205, 2216

---

[1] Relator has an outstanding balance with Robin Potter & Associates for $208,023.91 and with Muriel Renner, LLC for $13,262, but Relator only moves for $204,434.1650 and $12,760.00, respectively. See Relator's Attorneys' Complete Billing 45, 51. The Court relies on the latter amounts, the amounts requested in Relator's petition.

3

(2011). "The district court also should exclude from this initial fee calculation hours that were not reasonably expended." Hensley, 461 U.S. at 434 (internal quotations omitted). Furthermore, "in determining the number of hours 'reasonably expended' by counsel in the litigation, the court should ensure that counsel exercises 'billing judgment.'" Spegon v. Catholic Bishop of Chi., 175 F.3d 544, 553 (7th Cir. 1999). In examining whether the plaintiff's attorneys exercised "billing judgment," the Court has broad discretion to strike vague or poorly documented billing entries that an attorney would not ordinarily bill his or her client, hours billed at an attorney rate for "tasks that are easily delegable to non-professional assistance," and hours billed at a paralegal rate for clerical tasks. Id. (internal quotation marks and citation omitted); see also Montanez v. Simon, 755 F.3d 547, 555-56 (7th Cir. 2014).

Here, Defendants argue that the U.S. Government's involvement in this matter should have reduced the hours Relator's attorneys needed to expend on the case. To support this contention, Defendants include, among other things, a ten paragraph affidavit from AUSA Kelly who was assigned to the case. AUSA Kelly describes her interactions with Relator's counsel over the course of the litigation. Supplement to Defs.' Resp. to Relator's Pet. for Att'ys Fees & Expenses, Ex. A [hereinafter "Aff. of AUSA Kelly"]. AUSA Kelly declared that "[f]ollowing the filing of the complaint, [her] contact with Relator's counsel consisted of responding to periodic update requests" and that she "did not ask for assistance or request a meeting." Aff. of AUSA Kelly ¶ 7. AUSA Kelly notes that she held some conferences to discuss settlement matters, which Relator's counsel attended, and she also "received a disclosure statement from the Relator after the filing of the *qui tam* action." Id. ¶ 7-10. AUSA Kelly's affidavit supports Defendants' contention that the government spearheaded this litigation. However, AUSA Kelly's statements

4

are at times conflicting and her declarations are "based on [her] best recollection of the matter"; she did not review the case file before providing the affidavit. Id. ¶ 2.

In any event, simply because the government was involved in this case does not necessarily equate to an unreasonable expenditure of attorney time on behalf of Relator. The government's participation in a *qui tam* case leads to "dual participation of both the government and the *qui tam* plaintiff on the same side," not the entire replacement of the *qui tam* plaintiff or her representative counsel. 132 CONG. REC. H9382-03. Generally, *qui tam* cases are complex because of the relationship and number of parties involved, the complex legal framework and the detailed investigation required to prove fraud. Instead of litigation between only a plaintiff and defendant, this case included several corporate and individual defendants, as well as the intervention of federal and state governments. Additionally, the participation of federal and state governments does not necessarily mean that the government will always fully represent Relator's interests. Here, the federal government did not proceed with the retaliation claims on behalf of Relator. See Defs.' Resp. in Opp'n to Relator's Pet. for Att'ys Fees, Expenses & Costs, Ex. 1 at 6 [hereinafter "Settlement Agreement"]. Relator's attorneys' involvement ensured that their client's interests were adequately represented throughout the litigation, not just until the point of filing the complaint. It would have been a disservice to Relator if her attorneys had not contacted and followed up with AUSA Kelly and the other government attorneys who lead the case. Because of the complexity of this case, the Court does not find that Relator's attorneys' fees are outright excessive due to the involvement of the government attorneys, as Defendant contends.

The invoices submitted with the petition, however, show that Relator's attorneys did not always exercise "billing judgment." Spegon, 175 F.3d at 553. For example, in February of 2010, Robin Potter & Associates billed 22.62 hours for predominantly sending emails and having

5

discussions with co-counsel. Relator's Attorneys' Complete Billing at 32-35. Several of these line-item billing entries are vague and appear to be duplicates. On page thirty-three of the billing invoice, there are three separate charges with the identical description: "Receipt and review email from AUSA Kelly re: 2/18/10 meeting." Id. at 33. It appears that Robin Potter & Associates billed five hours to prepare for a status meeting on February 18, 2010 that lasted less than an hour and fifteen minutes. Over the course of the litigation, which is now in its eighth year and documented in fifty five pages of attorney invoices, these seemingly small charges add up.

The Court has reviewed the billing records and the arguments of both sides, and it reduces the lodestar of Robin Potter & Associates attorneys' fees by fifteen percent to account for their lapse in billing judgment. See Dutchak v. Cent. States, Southeast and Southwest Area Pension Fund, 932 F.2d 591, 597 (7th Cir. 1991) (holding that there is nothing impermissible as a matter of law for a district court to reduce an attorney's fees by a percentage). Accordingly, the Court finds reasonable a lodestar amount of $173,769.04 for Robin Potter & Associates. The Court finds that the lodestar for Muriel Renner LLC and The Law Offices of Edward G. Renner attorneys' fees are reasonable and declines to make any adjustments.

**C. Lodestar Reduction for Relator's Degree of Success on the Merits**

Next, Defendants argue that the amount of attorneys' fees requested is unreasonable because Relator was only partially successful on her claims and therefore her attorneys' fees should be reduced accordingly. See Farrar v. Hobby, 506 U.S. 103, 114 (1992) ("Indeed, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" (quoting Hensley, 461 U.S. at 436)). Specifically, Defendants contend that 1) the amount of money awarded to Relator reflects only a technical or *de minimus* victory; 2) Relator elected not to pursue the retaliation claims any further; and 3) only five of the seventeen

defendants were held liable and bound by the settlement agreement.

To support their *de minimus* argument, Defendants rely on Farrar and compare this case to two other *qui tam* cases from other federal district courts. 506 U.S. at 114-15; see also United States ex rel., Bahrani v. Conagra, No. 00–cv–1077, 2009 WL 2766805, at *5 (D. Colo. Aug. 28, 2009), vacated in part on other grounds, 624 F.3d 1275 (10th Cir. 2010); United States ex rel. Angell v. Planning Research Corp., C.A. No. 94.618-A (E.D. Va. Sept. 27, 1994). In Farrar, the plaintiff sought $17 million dollars, but only received a nominal damage award of one dollar. 506 U.S. at 114. However, the damage award in this case was not nominal or *de minimus*; Plaintiffs received almost $150,000. See Hyde v. Small, 123 F.3d 583, 585 (7th Cir. 1997) (holding that a $500 compensatory damage award was not nominal). The Court rejects Defendants' argument that the requested attorneys' fees should be reduced based on a technical or *de minimus* victory.

Defendants also argue that Relator was only partially successful on her claims because she elected not to pursue her retaliation claims following settlement of her FCA and IFCA claims. The Court finds this argument meritless under United States ex. rel. Fallon v. Accudyne Corp., 97 F.3d 937 (7th Cir. 1996). In Fallon, six relators and the Department of Justice settled with the defendant on one of two counts under the FCA, leaving the second count in the "hands of the relators." Id. at 938. As part of the settlement, the defendant affirmatively promised to pay relators' reasonable attorneys' fees. Id. at 939. The relators did not pursue the second count any further after the settlement, the district court dismissed the case in reliance on the settlement, and it awarded over $1.2 million in attorneys' fees. Id. The defendant challenged the award of attorneys' fees, arguing that it would have prevailed on the second count, if litigated to judgment, therefore, relators were only partially successful on their claims and the award was unreasonable.

7

Id. Rejecting this argument, the Fallon court held that accepting the defendant's argument "would not only undermine parties' incentives to settle but also squander judicial resources to permit a litigant to weasel out of a bargain as Accudyne [was] trying to do." Id. at 940.

The Settlement Agreement between the parties here is similar to the parties' agreement in Fallon. The Settlement Agreement entitled Relator to "expenses or attorney's fees and costs under 31 U.S.C. § 3730(d)." Settlement Agreement 6. The Settlement Agreement resolved the underlying FCA claims, but allowed Relator to further litigate her retaliation claims without the government as a party. Id. On October 14, 2011, the Court entered the following stipulation: "The parties have settled and resolved by and through their Settlement Agreements, all claims between the plaintiffs and defendants on the underlying Medicare and Medicaid fraud claims. The only remaining claim consists of a claim for attorneys' fees by the plaintiff Petra Hernandez . . . ." Stip. of J. in a Civil Action 1. Obviously, Relator dismissed or abandoned her claims before the stipulation was entered. However, when a *qui tam* case settles, like it did here and in Fallon, the question before the Court is "whether the [attorneys'] bill is reasonable, but not the question whether the United States (through the relators) 'prevailed'" on all counts. Fallon, 97 F.3d at 940.

Similarly, the Court finds disingenuous Defendants' argument that Relator achieved limited success on the merits because only five of the seventeen defendants were held liable and bound by the Settlement Agreement. The Settlement Agreement contains five signatures on behalf of Defendants; however, these signatures represent both individual and corporate defendants. Settlement Agreement 16. Five corporations and three individuals are bound by the Settlement Agreement for a total of eight out of the seventeen named Defendants, not five. Regardless, the Settlement Agreement resolved all of the underlying claims on the underlying

Medicare and Medicaid fraud claims, not a portion of them. Accordingly, the Court rejects Defendants' argument that Relator achieved only minimal success.

**D. Relator's Request to Increase the Lodestar**

In addition, Defendants object to Relator's request for the Court to increase the lodestar to account for the contingent nature of Relator's attorneys' fee agreement. In seeking an increase, Relator relies on the legislative history of the FCA. See 132 CONG. REC. H9382-03.

While the Court may increase the lodestar in exceptional circumstances, it usually declines to do so, because high quality legal representation is already reflected in the attorneys' hourly rate used to calculate the lodestar. Blum, 465 U.S. at 897-99. Relator provides no evidence that her attorneys' representation was exceptional. Additionally, the U.S. Supreme Court explicitly rejected the practice of enhancing attorneys' fees because of contingent fee agreements. City of Burlington v. Dague, 505 U.S. 557, 566 (1992) ("[T]he interest in ready administrability that has underlain our adoption of the lodestar approach and the related interest in avoiding burdensome satellite litigation counsel strongly against adoption of contingency enhancement." (citations omitted)). Relator does not cite a single case in the Seventh Circuit that has applied a contingency enhancement in a *qui tam* case. And, the Court declines to do so here.

**E. Relator's Request for Additional Fees Related to the Instant Petition**

Finally, Relator asks the Court to award the attorneys' fees associated with the instant petition. Defendants do not object. Relator already included these fees in the total amount of attorneys' fees requested in her petition, supported by the invoice attached to the petition. Thus, the Court finds any further adjustments unnecessary.

## III. CONCLUSION

For the foregoing reasons, Relator's petition for attorneys' fees is granted in part and denied in part. The Court awards $173,769.04 in attorneys' fees and $1,069.53 in costs to Robin Potter & Associates, a fifteen percent reduction from the requested attorneys' fee. The Court awards $12,760.00 in attorneys' fees and $736.15 in costs to Muriel Renner LLC. The Court awards $13,425.00 in attorneys' fees to The Law Offices of Edward G. Renner.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: October 14, 2014